**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: August 27 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 05-33812 |
| | ) | |
| Mei'cha D. Dyer-White, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 05-3207 |
| | ) | |
| Mei'cha D. Dyer-White, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| United States Department of Education, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on Plaintiff Mei'cha Dyer-White's Complaint against Defendant United States Department of Education seeking a discharge of student loan debt as an undue hardship. This case arose in and is related to Plaintiff's Chapter 7 bankruptcy case. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and the general order of reference in this district. Proceedings to determine the dischargeability of debts are core

proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff's student loan debt owed to Defendant cannot be discharged as an undue hardship.

## FINDINGS OF FACT

### I. Plaintiff's Education and Student Loans

Plaintiff attended but did not graduate from high school. She later attended an adult education vocational school through the Toledo Public School system where she took a construction technology class. Plaintiff explained that the class was a "hands on" class and required no studying. When asked what types of things she learned, she responded that she learned "to tear out a wall." Plaintiff eventually obtained a General Education Diploma through the public school system in Oregon, Ohio.

Plaintiff's student loans at issue in this case were incurred in 1996 and 1997 when she attended the University of Toledo. Plaintiff testified that she had been repeatedly told as she was growing up that she could not learn and that she viewed being accepted to attend the University of Toledo as an accomplishment. Plaintiff testified that she wanted to learn and to better herself in order to improve her situation. However, she did not successfully complete her classes. Although she persevered, taking one math class three times, she was unable to pass most of her classes and was, therefore, unable to return to school. As of August 15, 2005, the amount due and owing the United States Department of Education for the student loans obtained by Plaintiff during her two year college experience was $14,043.49, including $11,897.22 in principal and $2,141.27 in interest that is accruing at an annual rate of 6.10% or $1.98 per day. [Def. Ex. B].

In 2001, Plaintiff's income tax return in the amount of $3,195.15 was attached and applied to payment of her student loan debt. (Def. Ex. M Answer to Interrogatory #25). In addition, Plaintiff has made six payments between March 6, 2001 and May 6, 2005, in amounts ranging from $50 to $210. (Def. Ex. I and J). Plaintiff testified that she has been unable to otherwise make any payments.

### II. Plaintiff's Employment History and Financial Circumstances

Plaintiff is a 32 year old mother of two children, ages 2 and 5. Although she is married, her husband does not work or contribute to the household expenses. Plaintiff's husband, who is 38 years old, had

2

previously been employed in various positions earning between $5.00 and $9.00 per hour but was fired from his last job and had been unemployed for over eighteen months at the time of trial. Although at one point in time a court order was entered requiring Plaintiff's husband to pay her $660 per month for child support, she testified that she has never received any support payments from him.

Plaintiff's income and capability to work is somewhat difficult to discern from her testimony at trial. Plaintiff testified that she has been disabled since childhood. She testified that her disabilities include dyslexia, a learning disability and depression. She is being treated with prescription medications for her depression. She also testified that she has had two neck surgeries and that her physical restrictions include limitations on overhead lifting. Within two months before trial, Plaintiff had sprained her knee and her ankle, which were both still causing her some discomfort.

She testified that she currently receives Social Security disability insurance benefits and that she had previously received Supplemental Security Income (SSI). A document that appears to be a computer printout from the Social Security Administration that was offered by Defendant and admitted into evidence [*see* Def. Ex. M, unnumbered p. 16] indicates that Plaintiff applied for SSI in August 1993, that she was eligible for SSI at that time, and designates her as a "disabled individual." The document does not further explain, and the record is otherwise silent regarding, Plaintiff's disability.[1]

Plaintiff also testified that she had begun working part-time at Daimler Chrysler seven years earlier but that she was able to work only two of the past seven years. The nature of Plaintiff's position at Daimler Chrysler is not entirely clear. She testified that she works between 12 and 20 hours per week, depending on whether a job can be found for her and that she is always assigned to work with another individual as that person's "helper." She testified that when she was not working it was because there was no work for her to do and that she is often sent home before the eight-hour shift is complete. When asked the reason for being sent home, Plaintiff testified that she "has learned not to ask questions" and when told she is being sent home, simply responds, "OK, can I come back tomorrow?" She testified, however, that she and her family receive medical benefits when she is working and that she is a member of the United Auto Workers union.

Plaintiff testified that she earns $20 per hour when working and that she had returned to work at Daimler Chrysler approximately ten days before trial. However, her employment there has been sporadic

---

[1] At the close of trial, on agreement by the parties, the court ordered that the record remain open for a period of 45 days in order to allow Plaintiff to obtain documentation as to the nature of her disability and documentation that she is currently receiving disability benefits. However, no further documentation was filed.

3

over the years, being off work four to five months at a time, working a few weeks and then being off work again because there was no work for her. She testified that at one point in time she had not worked at all during a two-year period. Plaintiff testified that, except for small jobs through Private Industry Council, the Daimler Chrysler job was the only job she had ever had.

Plaintiff testified that she receives $700 per month in disability benefits. That amount, however, is decreased when she is working. In addition, her children receive SSI in the amount of $240 each per month.[2] When she is not working at Daimler Chrysler, she also receives food stamps in the amount of $400 per month. According to Plaintiff, when not working, her total monthly family income, including food stamps, is $1,580. When working twenty hours per week, assuming she receives no disability benefits during that time, her gross monthly income is approximately $1,733. It is not clear whether her children continue to receive SSI payments when Plaintiff is working.

As reported in her Schedule J filed with her petition, Plaintiff indicates current monthly expenses of $2,231. However, she testified that the home in which she and her family lived at the time she filed her bankruptcy petition is now in foreclosure due to Plaintiff's inability to meet her mortgage obligation and that she has moved into another home that is owned by her mother. Although her Schedule J expenses include a $660 mortgage payment, she now pays only $350 for rent. Schedule J also includes a monthly clothing expense of $200, which the court finds excessive given Plaintiff's circumstances and testimony at trial that she depends on others to provide clothing for her family. In addition to these expenses, Plaintiff testified that she is sending her daughter to private school. She testified that the tuition is $350, but was unsure of the time period covered by that amount. Plaintiff testified that she has not yet paid the tuition for her daughter's first year of school but anticipates her parents' help in paying the tuition. Adjusted to reflect her current rent and a more reasonable $100 monthly clothing expense, Plaintiff's average monthly expenses are approximately $1,821.

Plaintiff also testified that she has not filed income tax returns since 2001, the year her tax refund of nearly $3,200 was attached and applied to her student loan debt. As reasons for not filing, she explained that one of those years she had not worked at all and another year she "had not worked enough." In addition, Plaintiff testified that she did not file her tax returns because she does not have anyone to help her do so. The court does not credit that testimony as she clearly was able to find such help in 2001, and there

---

[2] On Schedule I, Plaintiff reports disability benefits of $931 per month and SSI benefits for her children in the amounts of $465 for one child and $223 for the other. While these amounts may have been adjusted since April 19, 2005, the date Plaintiff filed her petition, due to periods of Plaintiff's employment at Daimler Chrysler, no explanation was offered for the decreased amounts being received at the time of trial.

4

is no reason to believe that she could not obtain such help in the following years.

Plaintiff filed her Chapter 7 petition on April 19, 2005. She has minimal or no non-exempt assets that could be used to pay her student loan debt.

## LAW AND ANALYSIS

Plaintiff seeks to discharge her student loan debt based upon the "undue hardship" exception to nondischargeability of such debt in 11 U.S.C. § 523(a)(8).[3] Section 523(a)(8) provides for the dischargeability of a student loan obligation if "excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents. . . ." The underlying purpose of this provision is "to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998).

Although the Bankruptcy Code does not define "undue hardship," the Sixth Circuit has adopted the test set forth in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) in determining the existence of "*undue* hardship." *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the *Brunner* test, the debtor must prove each of the following three elements:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at *1 (quoting *Brunner*, 831 F.2d at 396).

A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *Chime v. Suntech Student Loan (In re Chime)*, 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003). But in cases in which a debtor fails to establish an undue hardship justifying the exception of her entire debt, the court must take one further step. In *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir. 1994), the Sixth Circuit authorized trial courts to evaluate undue hardship under § 523(a)(8) in light of and in conjunction with 11 U.S.C. § 105(a). *Cheesman*, 25 F.3d at 360-61. In

---

[3] Section 523(a)(8) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005("BAPCPA" or "the Act"), effective October 17, 2005. However, Plaintiff's bankruptcy case was filed before the effective date the Act. Therefore, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Title XV, § 1501(b)(1) (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

*Hornsby*, the Sixth Court appears to require trial courts to undertake such an analysis. *Hornsby*, 144 F.3d at 440 (reversing decision granting a total discharge of student loan debt and remanding for consideration of a partial remedy under § 105(a)). More recently, in *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616 (6th Cir. 2004), the Sixth Circuit made clear that a partial remedy granted pursuant to the equitable powers of § 105(a) does not eliminate the requirement of undue hardship. *Miller*, 377 F.3d at 622. Section 105(a) authorizes a court to grant a partial discharge only where the undue hardship requirement of § 523(a)(8) is met as to the part discharged. *Id.*

Before *Oyler,* courts in the Sixth Circuit at times found equitable adjustment of student loan debt to be appropriate when the debtor had a present inability to pay their entire student loan debt but did not satisfy the second or third prong of the *Brunner* test, that is, they failed to show that their financial adversity was likely to persist for a significant portion of the repayment period or that they had made good faith efforts to repay the loans. *See, e.g., Flores v. U.S. Dept. of Education (In re Flores)*, 282 B.R. 847 (Bankr. N.D. Ohio 2002); *Garybush v. U.S. Dept. of Education (In re Garybush)*, 265 B.R. 587 (Bankr. S.D. Ohio 2001). Under *Oyler*, however, all three prongs of the *Brunner* test must now be satisfied for the court to find undue hardship. As undue hardship must exist with respect to any part of a student loan debt that is discharged, equitable adjustment of the debt can only come into play under the court's analysis of the first prong of the *Brunner* test.

The first prong of the *Brunner* test contemplates that a debtor is first entitled to provide for basic needs for food, clothing, shelter, medical care and transportation for herself and her dependents, if any, before repaying student loan debts. In applying this test, the court must therefore evaluate a debtor's household income and expenses, focusing particularly on what expenses are necessary to realistically maintain a basic standard of living and then determining whether there is income left over with which to pay student loan debts.

In this case, Plaintiff's monthly income is between $1,580 and $1,733. Her adjusted expenses of approximately $1,821 are reasonable and are not out of line with maintaining a basic standard of living. Plaintiff is, therefore, presently left with no monthly disposable income with which to make a payment on her student loan debt, satisfying the first prong of the *Brunner* test.

Under the second prong of the *Brunner* test, a debtor's financial adversity is required to be more than a temporary state of affairs. *Hatfield v. William D. Ford Fed. Direct Consol. Program (In re Hatfield)*, 257 B.R. 575, 582 (Bankr. D. Mont. 2000); *see also Hornsby*, 144 F.3d at 437 ("Courts universally require more than temporary financial adversity. . ."). A debtor must show additional circumstances indicating that

6

her distressed state of financial affairs is likely to persist for a significant portion of the repayment period. *Oyler*, 397 F.3d at 386. "Such circumstances must be indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" *Id.* (citing *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993)). Implicit in this requirement is that the debtor's financial state be the result of events which are clearly out of the debtor's control. *Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002). Thus, the debtor must establish that she has taken all steps possible to improve her financial situation. *Id.* This requirement thus gives effect to the clear congressional intent – exhibited by the use of the word "undue" in § 523(a)(8) – that a student loan obligation be more difficult to discharge than that of other nonexcepted debts. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1088-89 (9th Cir. 2001).

Plaintiff has failed to meet her burden under the second prong of the *Brunner* test. Plaintiff is off work for months at a time and, when working, works only 12 to 20 hours per week. Although Plaintiff testified that she is disabled due to a learning disability, dyslexia and depression and that she had recently experienced a sprained knee and ankle, she offered no testimony regarding the extent of her disabilities or how her disabilities prevent her from working. *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, – F.3d –, 2007 WL 2263097 (11th Cir. Aug. 9, 2007) (citing *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353 (2007) and finding that "the crucial requirement is that the debtor show how his medical conditions prevent him from working"). Nor did she offer any evidence, despite additional time granted her after the trial to do so, to document the existence, nature and extent of her disabilities. While a debtor's testimony, if found credible, may be sufficient even without corroborating expert medical evidence of a disability, *Barrett*, 487 F.3d at 360, Plaintiff's testimony included only a listing of her disabilities with no detail at all as to their extent or how the disability, or combination of disabilities, prevent her from working full time. As such, it is insufficient for the court to base a finding that a circumstance exists that makes it unlikely that Plaintiff will be able to pay her student loans for a significant portion of the repayment period.

Furthermore, Plaintiff has not filed income tax returns since 2001, at which time her tax refund of $3,195 was attached and applied to her student loan debt. Even if Plaintiff is able to work only part-time as she has testified, if she files her income tax return each year, she would likely be entitled to an earned income tax credit. *See* 26 U.S.C. § 32. Assuming she works only 15 hours per week for forty weeks of the year and earns $12,000, for taxable years beginning in 2007, she would be entitled to an earned income tax credit of $4,716. *See* Revenue Procedure 2006-53 § 3.07, set out as a note under 26 U.S.C. § 1. To the extent that Plaintiff earns less than $12,000, she is still entitled to a tax credit of 40% of her earned income.

*See* 26 U.S.C. § 32(b)(1). In addition to future income tax returns, Plaintiff may file returns and claim the earned income tax credit for the preceding two years. *See* 26 U.S.C § 6511 (setting a limitation period for claiming a credit or refund of two years from the time the tax was paid where no tax return has been filed). If Plaintiff files her income tax returns in order to obtain the earned income tax credit and applies her tax refunds to her student loan debt, she would likely be able to pay off the $14,043 student loan debt in a reasonably short period of time without using any of her disability benefits or monthly earned income and without any change in her current standard of living. The court concludes on the facts before it that Plaintiff has also failed to meet her burden of proving that she has taken all steps possible to improve her financial situation. *See Kirchhofer*, 278 B.R. at 167.

Finally, under the third prong of the *Brunner* test, a debtor must demonstrate that she has made a good faith effort to repay the loan. In this case, except for the attachment of her income tax refund in 2001, Plaintiff has made minimal payments on her student loan obligations. Nevertheless, this fact alone does not automatically foreclose a finding of good faith. The good faith requirement does not mandate that payments must have been made when the debtor's circumstances made such payment impossible. *See Alston v. U.S. Dept. of Educ. (In re Alston)*, 297 B.R. 410, 414 (Bankr. E.D. Pa. 2003); *Grove v. Educ. Credit Mgmt. Corp. (In re Grove),* 323 B.R. 216, 226 (Bankr. N.D. Ohio 2005) (explaining that "a debtor might establish good faith in the absence of any payments by demonstrating that the circumstances are so dire and the future outlook so bleak that nothing short of an immediate discharge of the debt will avoid an undue hardship on the debtor or the debtor's dependents"). As one court explained, the good faith standard is really a question of overall good faith in regard to the student loan, and the good faith analysis is driven by the totality of the circumstances. *Afflitto v. United States (In re Afflitto)*, 273 B.R. 162, 171 (Bankr. W.D. Tenn. 2001). Factors courts typically consider in this analysis include the following:

> (1) whether debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;
> (2) whether debtor has realistically used all available financial resources to repay the debt:
> (3) whether debtor is using her best efforts to maximize earning potential;
> (4) the length of time after the loan first becomes due after debtor seeks to discharge the debt;
> (5) the percentage of student loan debt in relation to debtor's total indebtedness; and
> (6) whether debtor obtained any tangible benefit from the student loan obligations.

*Flores v. U.S. Dept. of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr. N.D. Ohio 2002).

This is not a case in which a debtor is seeking a discharge of student loan debt when on the verge of reaping the benefit of her education. Plaintiff filed her petition nearly nine years after attending college,

and she obtained no tangible benefit whatsoever from going to the University of Toledo and the attendant student loan obligations. And although her student loan debt constitutes over 50% of her unsecured debt, the court does not find that to be a significant fact in its good faith determination. Rather, Plaintiff's failure to demonstrate any of the first three factors from the *Flores case*, set forth above, convinces the court that she has failed to meet her burden of showing a good faith effort to repay her loans. Instead of continuing to file income tax returns after her 2001 refund was attached and applied to her student loan debt, she simply ceased filing any returns when it became apparent that any refunds would be diverted. Although she testified that she did not work at all during one year, there are three other years that she failed to file a tax return. Had she filed tax returns in those years, it is more likely than not that a significant refund due to the earned income tax credit could have been applied to her student loan debt. On this state of the record, the court cannot find that her failure to repay was due to factors beyond her reasonable control or that she used all available resources to repay her debt. In addition, having failed to show how her disabilities prevent her from working any more than 12 to 20 hours per week, the court cannot conclude that Plaintiff has used her best efforts to maximize earning potential. The court concludes that Plaintiff has not met her burden of proving that the totality of the circumstances demonstrates a good faith effort to repay her student loan debt.

## CONCLUSION

Plaintiff having failed to meet all three prongs of the *Brunner* test, the court cannot find that payment of her existing student loan debt, or any part thereof, would be an undue hardship. To the extent that Plaintiff experiences unanticipated events in the future that impair her ability to repay the student loan debt, other relief options may be available.[4]

A separate judgment effecting this Memorandum of Decision will be entered by the court.

---

[4] Section 523(b) provides that a debt excepted from discharge in a prior case under § 523(a)(8) is dischargeable in a later case under Title 11 unless it still falls within the terms of § 523(a). While the court does not encourage repeat bankruptcy filings, under current law, if necessary, undue hardship may be re-evaluated in light of circumstances existing at the time of the later case. In addition, to the extent that Plaintiff is able in the future to demonstrate a permanent disability that causes her to be unable to repay her student loan debt, she may seek an administrative discharge based on disability. *See* 34 C.F.R. § 674.61.

9